**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

EVANGELINA FULKS, Administratrix                                                    PLAINTIFF
of the ESTATE OF JULIA FULKS

v.                                               No. 3:10CV00310 JLH

UNION PACIFIC RAILROAD COMPANY                                                DEFENDANT

**OPINION AND ORDER**

Julia Fulks was killed when a Union Pacific Railroad Company train struck her vehicle at a railroad crossing in Craighead County, Arkansas. Evangelina Fulks, administratrix of the estate of Julia Fulks, alleges that Union Pacific was negligent in several respects, including:

   f.   Failure to have adequate warnings or devices at the crossing, such as signs, gates and properly working flashing lights sufficient to address the safety needs of the motoring public;

   g.   Failure to mark the crossing with sufficient information for reasonably safe passage;

   h.   Failure to properly construct and design the crossing to allow safe passage[.]

Complaint, ¶ 5. Fulks also alleges that Union Pacific was negligent for failing to maintain the right-of-way and crossing, failing to remove line-of-sight obstructions, and failing to install, test, maintain, repair and operate the crossing's flashing lights so that they were activated at least twenty seconds before the locomotive entered the crossing.

Union Pacific has moved for partial summary judgment, contending that Fulks' claim that the warning devices were inadequate is preempted by federal law. *See* 49 U.S.C. § 20106(a) (providing for national uniformity, to the extent practicable, in laws and regulations pertaining to railroad safety).

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

Among the regulations promulgated by the Secretary of Transportation pertaining to railroad/highway crossings are 23 C.F.R. §§ 646.214(b)(3) and (4), which provide that:

> (3)(I) Adequate warning devices, under § 646.214(b)(2) or on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals when one or more of the following conditions exist:
>
> (A) Multiple main line railroad tracks.
>
> (B) Multiple tracks at or in the vicinity of the crossing which may be occupied by a train or locomotive so as to obscure the movement of another train approaching the crossing.
>
> (C) High Speed train operation combined with limited sight distance at either single or multiple track crossings.
>
> (D) A combination of high speeds and moderately high volumes of highway and railroad traffic.
>
> (E) Either a high volume of vehicular traffic, high number of train movements, substantial numbers of schoolbuses or trucks carrying hazardous materials, unusually restricted sight distance, continuing accident occurrences, or any combination of these conditions.
>
> (F) A diagnostic team recommends them.

> (ii) In individual cases where a diagnostic team justifies that gates are not appropriate, [the Federal Highway Administration] may find that the above requirements are not applicable.
>
> (4) For crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of [the Federal Highway Administration].

(2003). These regulations were promulgated pursuant to the Highway Safety Act of 1973, 23 U.S.C. § 130, which make federal funds available to states to improve railroad crossings, in return for which the states were required to survey all highways to identify railroad crossings that may need protective devices and to implement a schedule of projects for that purpose. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663, 113 S. Ct. 1732, 1737, 123 L. Ed. 2d 387 (1993) (quoting 23 U.S.C. § 130(d)).

The Supreme Court has held that these provisions mean that, "for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection." *Easterwood*, 507 U.S. at 671, 113 S. Ct. at 1741. Thus, federal grade crossing regulations preempt state-law tort claims "if federal funds were used to install the warning devices at the crossing where the accident occurred." *Elrod v. Burlington N. R.R. Co.*, 68 F.3d 241, 243 (8th Cir. 1995). This preemption takes effect when the warning devices are "installed and operational." *Bock v. St. Louis Sw. Ry. Co.*, 181 F.3d 920 (8th Cir. 1999); *see also Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 354, 120 S. Ct. 1467, 1474, 146 L. Ed. 2d 374 (2000) (state authority is preempted once federally funded warning devices are "actually installed and operating").

The affidavit of Don Flowers and the exhibits attached thereto establish that crossbucks and flashing light signals, paid for in large part by federal funds, were installed at that crossing,

3

inspected, and approved by the Arkansas State Highway and Transportation Department in the late 1970s. Fulks contends that her claims are not preempted, despite the Supreme Court's holding in *Easterwood* and *Shanklin*, because the Flowers affidavit establishes only that the flashing lights were installed using federal funds, not that they were operational. She also submits her own affidavit and the affidavit of another witness, Pam Jiles, testifying that, although they were not present at the time of the accident, they were familiar with the railroad crossing and that the flashing lights did not come on and stay on for a full twenty seconds at times when they approached the crossing.[1]

Contrary to Fulks' first argument, the Flowers affidavit states that on March 28, 1978, representatives of the Arkansas State Highway and Transportation Department performed a final inspection and issued a report that stated that the project had been satisfactorily completed and was accepted. Although the Flowers affidavit and the report do not use the terms "operational" or "operating," to say that the project has been "satisfactorily completed" is to say that the flashing lights were operating. Moreover, the affidavits submitted by Fulks and Jiles concede, in effect, that the flashing lights were operational. They deny that the lights operated properly in that the lights did not come on and stay on for a full twenty seconds at times, but implicit in that denial is that the flashing lights were operating. Finally, in its reply, Union Pacific has submitted affidavits from two employees who inspected the flashing lights before and after the accident that killed Julia Fulks, and both state that the lights were operational. There may be a dispute as to whether, at the time of the accident, the flashing lights would come on and stay on twenty seconds before a locomotive arrived,

---

[1] Union Pacific was moved to strike these two affidavits on the basis that neither Fulks nor Jiles actually witnessed or had personal knowledge of the collision. The Court denies that motion. While Fulks and Jiles admittedly have no personal knowledge of the collision itself, they do have personal knowledge of how the warning devices operated at a time very close to that of the collision. Jiles, for example, states that she crossed the Highway 226 tracks weekly, both before and after the accident.

but there is no dispute about the fact that the lights were installed with federal funds and were operational.

Fulks seems to argue that if the flashing lights were not operating properly at the time of the accident then none of her claims about the adequacy of the warning devices are preempted. If Fulks is arguing that events subsequent to the installation of the warning devices with federal funds can negate preemption with respect to whether the appropriate warning devices were installed, that argument is mistaken. "Whether the State should have originally installed different or additional devices, or whether conditions at the crossing have since changed such that automatic gates and flashing lights would be appropriate, is immaterial to the pre-emption question. . . . What states cannot do – once they have installed federally funded devices at a particular crossing – is hold the railroad responsible for the adequacy of those devices." *Shanklin*, 529 U.S. at 358, 120 S. Ct. at 1476; *see also Union Pac. R.R. Co. v. Sharp*, 330 Ark. 174, 191, 952 S.W.2d 658, 666 (1997) ("once warning devices paid for with federal funds are installed and operating, the railroad's common-law duty to determine what warning devices are adequate for a particular crossing ceases . . . .").

The Eighth Circuit decision in *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472 (8th Cir. 1996), upon which Fulks relies, is not to the contrary. There, the Kiemeles alleged that the railroad was negligent in its operation of the train, in its maintenance and operation of the crossing, and in its failure to improve and upgrade the roadwork at and approaching the crossing. *Id*. at 474, 476. The Kiemeles did not allege that different or additional warning devices should have been installed in the beginning, nor that conditions had changed such that different warning devices should later have been installed. With respect to the warning devices, their only claim was that the railroad had breached its duty by failing to maintain them: "The Kiemeles . . . assert that Soo Line breached its

5

duty by failing to maintain the crossbucks at the crossing." *Id*. at 475. In addressing the failure to maintain claim, the Eighth Circuit stated, "In this case, there is a fact issue as to whether or not the crossbucks were 'operating.' If they had lost their reflectivity, they were not operating, and Soo Line is not entitled to the benefit of federal preemption." *Id*. at 476. In the conclusion to the opinion, the Eighth Circuit said that there was a genuine issue of material fact as to "whether Soo Line improperly maintained the crossing signs[.]" *Id*. at 478. *Kiemele* simply does not hold that, if warning devices installed with federal funds cease to function properly, state-law claims that the railroad should have installed different or additional devices cease to be preempted. Indeed, the Eighth Circuit did not even address that issue. *Cf. Stevenson v. Union Pac. R.R. Co.*, 110 F. Supp. 2d 1086, 1098 (E.D. Ark. 2000) ("[The Kiemeles] did not argue that Soo Line had breached its duty by failing to install lights and gates. The Eighth Circuit ruled that the Kiemeles should have been allowed to proceed on their claim that the defendant's failure to maintain the crossbucks caused their accident."). Here, Union Pacific has not moved for summary judgment on Fulks' claim that it was negligent in maintaining the flashing lights. *Cf. Michael v. Norfolk S. Ry. Co.*, 74 F.3d 271, 273 (11th Cir. 1996) (holding that "23 C.F.R. §§ 646.214(b)(3) and (4) are not applicable to a claim for negligent maintenance or for failure to warn, and do not preempt such claims"); *Sharp*, 330 Ark. at 192, 952 S.W.2d at 668 ("while the Highway Safety Act preempts a claim that the railroad failed to install adequate warning devices, it does not preempt a claim that the railroad was negligent in failing to maintain the warning devices . . . .").

Fulks also contends that a 2007 amendment to the Federal Railroad Safety Act preemption statute, 49 U.S.C. § 20106, has legislatively overruled *Easterwood* and *Shanklin* and restored the

rights of victims to sue railroads for negligence under state law. This provision, titled "Clarification regarding State law causes of action," states:

> (1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party–
>
> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
>
> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
>
> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).
>
> (2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

49 U.S.C. § 20106(b) (2007). This amendment was analyzed at length by the Tenth Circuit in *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1214-16 (10th Cir. 2008). As the Tenth Circuit explained, the 2007 amendment overruled specific district court decisions holding that the Federal Railroad Safety Act preempted state-law claims even when the plaintiffs alleged that the railroads had failed to comply with an established federal safety standard of care. *Id*. at 1215-16. The 2007 amendment, however, did not overrule *Easterwood* and *Shanklin* because 23 C.F.R. §§ 646.214(b)(3) and (4) do not establish a federal standard of care under which a railroad must act. *Henning*, 530 F.3d at 1215-16. Instead, those regulations take the decision as to what warning devices are needed out of the railroad's and the state's hands. *Id*. at 1215. *See also Petersen v. Union Pac. R.R. Co.*, 567 F. Supp. 2d 1043, 1053-54 (C.D. Ill. 2008) (holding that the 2007 FRSA

amendment does not negate federal preemption where a warning system at a railroad crossing was installed using federal funds).

For the reasons stated, Union Pacific's motion for partial summary judgment is GRANTED. Document #22. Fulks' claims that different or additional warning devices should have been installed at the crossing in question are preempted by federal law and are dismissed.

IT IS SO ORDERED this 9th day of November, 2011.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE